USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec. 11, 2015

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
AARON HAIMOWITZ and CARYN LERMAN,   :
                                    :
                  Plaintiffs,       :
                                    :    No. 09 Civ. 10068 (JFK)
     -against-                      :
                                    :    **OPINION & ORDER**
NOVARTIS PHARMACEUTICALS CORP.,     :
                                    :
                  Defendant.        :
------------------------------------X

APPEARANCES
FOR PLAINTIFFS AARON HAIMOWITZ and CARYN LERMAN:
    Daniel Osborn, Esq.
    OSBORN LAW, P.C.

FOR DEFENDANT NOVARTIS PHARMACEUTICALS CORP.:
    David Richman, Esq.
    RIVKIN, RADLER LLP

    Neil Bromberg, Esq.
    SPRIGGS & HOLLINGSWORTH LLP

**JOHN F. KEENAN, United States District Judge**:

    Before the Court is Defendant Novartis Pharmaceuticals Corporation's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendant seeks summary judgment on the ground that Plaintiff Beryl Haimowitz's tort and warranty claims are untimely under New York law.[1] For the reasons that follow, the motion is granted and summary judgment is entered in Defendant's favor.

---

[1] For the sake of clarity, this opinion will continue to refer to Beryl Haimowitz as the "Plaintiff" in this case, notwithstanding that Ms. Haimowitz's two children were substituted as plaintiffs following her death in August 2012.

## I. Background

The following facts are taken from the record following discovery. This case concerns allegations that Plaintiff's use of the drug Aredia caused her to develop bisphosphonate-related osteonecrosis of the jaw (referred to as "ONJ"). Bisphosphonate-related ONJ is defined as exposed bone in the jaw of more than eight-weeks duration in a patient who has undergone bisphosphonate treatment and who has not received radiation to the jaw. (ECF No. 21, Def.'s Statement of Undisputed Facts ("SUF") ¶¶ 5-8.) Aredia is a Food and Drug Administration-approved bisphosphonate medication sold by Defendant Novartis Pharmaceutical Corporation ("Novartis"), which is prescribed for the prevention of bone damage in patients with multiple myeloma or cancer. (ECF No. 26, Def.'s Mem. at 4.)

Plaintiff was living in New York in December 1995 when she was diagnosed with multiple myeloma. As a result, Ms. Haimowitz's oncologist at the time—Dr. Ivan K. Rothman—prescribed Aredia as part of her treatment. Medical records from Dr. Rothman's practice show that Plaintiff received Aredia on a monthly basis from December 29, 1995 through May 28, 1997 and then from August 8, 1997 through March 29, 2002.[2]

---

[2] In addition, on May 2, 2002, Ms. Haimowitz received an injection of Zometa—another bisphosphonate drug used to treat bone damage in patients with multiple myeloma or cancer. (Pls.' Resp. to SUF ¶¶ 14-26.)

In July 1997, while her treatment with Aredia was ongoing, Ms. Haimowitz underwent oral surgery to extract a lower left molar. Healing was normal until November 18, 1997, when Plaintiff began to complain of swelling, pain, and exposed bone at the extraction site. Thereafter, from November 1997 through August 2002, Plaintiff repeatedly sought treatment for symptoms including infections and exposed bone in her jaw. (Pls.' Resp. to SUF ¶¶ 14-26.) These symptoms became serious enough that Ms. Haimowitz underwent surgery for the "resection of her mandible" in August 2002. (See id. ¶¶ 20, 27).

Plaintiff continued to live in New York throughout the time that she was treated with Aredia. (SUF ¶¶ 2, 35-38.) In June 2002, however, she moved from New York to Maryland. Shortly thereafter, her new oncologist—Dr. Flavio Kruter—discontinued her bisphosphonate treatment. Plaintiff's medical records from the time indicate that Ms. Haimowitz's jaw problems continued over the following years and that at least some of her doctors believed that these problems were due to bisphosphonate-related ONJ. (SUF ¶¶ 26-30.)

Plaintiff filed this action on December 8, 2009. The complaint asserts common law claims for tort and breach of warranty. Following Ms. Haimowitz's death due to unrelated causes in August 2012, her children—Aaron Haimowitz and Caryn Lerman—were substituted as plaintiffs in this case. (See ECF No.

3

8-7, Order dated Jan. 15, 2014.)  The present motion for summary judgment was filed by Novartis on November 2, 2015.

## II. Discussion

### A.   Legal Standard

Summary judgment is warranted when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

Where a defendant requests summary judgment on the ground that the statute of limitations on plaintiff's claim has run, the defendant bears the burden of proving that the particular limitation period has expired. Vincent v. Money Store, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)(noting that the party seeking summary judgment bears the burden of demonstrating the absence of any genuine factual dispute).  Once that burden has

been met, however, it falls to the plaintiff to prove that the statute of limitations has been tolled. Id.

### B. Analysis

### 1. Choice of Law

As a preliminary matter, the parties dispute what state's law controls the statutes of limitations in this case. Plaintiff contends that Maryland law governs the limitations period for both sets of claims on the ground that she resided in Maryland when she allegedly discovered that Aredia was the cause of her injuries and filed this action against Novartis.  By comparison, Novartis argues that New York's statute of limitations applies to Plaintiff's claims, because Ms. Haimowitz resided in New York at the time that she received all of her Aredia infusions and was in New York when she first developed ONJ-related symptoms.

It is well-settled that where, as here, federal jurisdiction rests upon diversity of citizenship, the district court must apply the forum state's statute of limitations provisions.[3] See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Vincent, 915 F. Supp. 2d at 562.  Where a

---

[3] According to the Complaint, Plaintiff Beryl Haimowitz was a resident and citizen of Baltimore, Maryland at the time that this case was filed.  By comparison, Novartis is a Delaware corporation with its principle place of business in East Hanover, New Jersey.

nonresident plaintiff brings an action in New York—the forum state in this case—New York law provides for different limitations provisions depending on where the underlying cause of action accrued.  Where a nonresident plaintiff asserts a claim that accrued in New York, then New York law controls the applicable limitations period. See, e.g., Martin v. Julius Dierck Equip. Co., 52 A.D.2d 463, 465 (N.Y. App. Div. 1976) (addressing claims by a nonresident and reasoning "that since the warranty claims accrued in this State, New York's own four-year Statute of Limitations applied" (internal citation omitted)).  Alternatively, where a nonresident plaintiff files suit based on a cause of action that accrued outside New York, New York's borrowing statute instructs courts to apply the shorter statute of limitations period, as well as all applicable tolling provisions, provided by either New York or the state where the cause of action accrued. N.Y. C.P.L.R. § 202; see Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 710 (2d Cir. 2002).  Thus, "[w]here a nonresident brings a cause of action that accrued outside of New York . . . , the action must be timely in both New York and the other jurisdiction." Oxbow Calcining USA Inc. v. Am. Indus. Partners, 96 A.D.3d 646, 651 (N.Y. App. Div. 2012).

Applying these provisions to the present case, the practical effect is that summary judgment on statute of

limitations grounds will be appropriate, regardless of whether Plaintiff's claims accrued in New York or Maryland, if those claims are untimely under New York law. The Court will therefore apply New York's statute of limitations provisions and will only proceed to apply Maryland law if it appears that Plaintiff's claims would otherwise be timely.

### 2. The Tort Claims

It is well settled that New York's three-year statute of limitations period for tort claims involving latent injuries begins to run on "the date of the discovery of the injury by the plaintiff." N.Y. C.P.L.R. § 214-c(2). The New York Court of Appeals has clarified that "discovery of the injury" refers to "discovery of the physical condition and not . . . the more complex concept of discovery of both the condition and the nonorganic etiology of that condition." Wetherill v. Eli Lilly & Co., 89 N.Y.2d 506, 514 (1997); see also Gaillard v. Bayer Corp., 986 F. Supp. 2d 241, 246 (S.D.N.Y. 2013) (noting that a specific diagnosis is "completely inconsistent" with New York law). In other words, the three-year limitations period begins to run on the date that the plaintiff becomes aware of her injury, not when she learns of its cause. See Galletta v. Stryker Corp., 283 F. Supp. 2d 914, 917 (S.D.N.Y. 2003) ("[The] limitations period runs from the date when plaintiff first

noticed symptoms, rather than when a physician first diagnosed those symptoms.").

A straightforward application of Section 214-c(2) to the undisputed facts in this case indicates that Plaintiff's tort claims are untimely.  First, because the present action was filed on December 8, 2009, the ordinary three-year statute of limitations on Plaintiff's tort claims will have run unless they accrued on or after December 8, 2006.  Ms. Haimowitz's medical records demonstrate, however, that she complained of ONJ-related symptoms—including swelling and exposed bone in her jaw—as early as November 1997. (SUF ¶¶ 14-22.)  Moreover, her medical records for the period of January 1998 forward indicate that she repeatedly sought attention for "a nonhealing extraction socket," as well as pain, swelling and other signs of infection in her jaw.  (Pls.' Resp. to SUF ¶¶ 14-26.)  These symptoms were serious enough to require Ms. Haimowitz to undergo surgery for the "resection of her mandible" in August 2002 (see id. ¶¶ 20, 27).  The Court also notes that, at the time of her surgery in August 2002, at least some of her doctors had diagnosed her condition as "chronic osteomyelitis" or "Aredia-induced osteonecrosis." (See id. ¶¶ 17, 20, 26.)  Thus, even assuming that her initial symptoms in 1997 were "too isolated or inconsequential to trigger the running of the Statute of Limitations under CPLR 214-c(2)" (see Wetherill, 89 N.Y.2d at

514 n.4), her symptoms were clearly serious enough by August 2002 to put Ms. Haimowitz on notice of her injury, thereby triggering the statute of limitations period under New York law, even if she did not yet know the cause of those symptoms with certainty.  See, e.g., Whitney v. Quaker Chem. Corp., 90 N.Y.2d 845, 847 (1997) (considering multiple hospital visits to be indicative of plaintiff's discovery of the injury).

Plaintiff's claims are therefore time barred under New York law unless she can establish that the limitations period has been extended by an applicable tolling provision. See Vincent, 915 F. Supp. 2d at 562.  To this end, Plaintiff contends that the "unknown cause exception" to the ordinary three-year statute of limitations applies to her claims. See N.Y. C.P.L.R. § 214-c(4).  The "unknown cause exception" addresses situations where "injuries are novel or hard to detect, and their causes are at first unknown." See Gaillard, 986 F. Supp. 2d at 249.  Where the unknown cause exception is shown to apply, it tolls the statute of limitation for a maximum of 6 years, including up to "five years after the discovery (actual or constructive) of the injury [for the plaintiff] to ascertain its cause" and a further one year from the date of causal discovery for the plaintiff to commence an action. See Freier v. Westinghouse Elec. Corp., 303 F.3d 176, 184 (2d Cir. 2002).  Importantly, if a plaintiff "does not (or cannot) discover the etiology [of his injury] within

9

five years, then he is barred by the statute of limitations." Id.; see also Annunziato v. City of New York, 224 A.D.2d 31, 38-39 (N.Y. App. Div. 1996) ("The statute does not contemplate that a plaintiff may in effect indefinitely toll the Statute of Limitations while searching for the cause of the injury.").

Once again, a plain reading of the record demonstrates that Plaintiff's tort claims are time barred, even if the unknown cause exception is applied. As explained above, the statute of limitations on Plaintiff's tort claims accrued no later than August 2002, by which time Plaintiff's symptoms were serious enough to make her aware of her injury. See Galletta, 283 F. Supp. 2d at 917. The unknown cause exception does not change this conclusion. See Freier, 303 F.3d at 184. Instead, assuming that it applies, the unknown cause exception would have merely extended the limitations period on Plaintiff's tort claims from three-years to a maximum of six years—that is, Ms. Haimowitz would have had at most five years from August 2002 to determine the cause of her injuries (i.e., that they were due to her use of Aredia), and then an additional year to actually commence this action against Novartis. Thus, Plaintiff's tort claims are time barred even if the unknown cause exception is applied, because this action was not commenced until December 2009—more than seven years after the latest date by which Plaintiff's tort claims had accrued.

10

### 3. The Warranty Claims

Plaintiff's memorandum does not expressly oppose Defendant's request for summary judgment on her warranty claims.[4] (See ECF No. 22, Pls.' Opp. at 2 n.3.)  Nevertheless, even where a summary judgment motion is unopposed, the movant must still establish that no material issues of fact remain for trial and the undisputed facts must show that the movant is entitled to judgment as a matter of law. See Signature Bank v. HKD Prods., Inc., No. 12 Civ. 6149, 2013 WL 1130247, at *2 (S.D.N.Y. Mar. 19, 2013).

Under New York law, a cause of action for a breach of warranty that is not a warranty as to future performance accrues when tender of delivery is made. See N.Y. U.C.C. §2-275.  Thus, where a breach of warranty claim is asserted against a drug manufacturer, the statute of limitation generally accrues at the time of the latest sale of the allegedly defective drug. See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., No. 07 Md. 1871, 2015 WL 1728127, at *3 (E.D. Pa. Apr. 10, 2015) (applying New York law and holding that breach of warranty claims against a drug manufacturer were time barred where the plaintiff last filled his prescription in 2007 but did not

---

[4] Plaintiff's counsel suggested at oral argument, however, that if Plaintiff's tort claims are found to be timely, then her warranty claims should also survive.

commence his lawsuit until 2013); see also Reis v. Pfizer, Inc., 61 A.D.2d 777, 777 (N.Y. App. Div. 1978) (finding that breach of warranty claims accrued at the time of the sale of the allegedly defective vaccine).

Here, it is clear that Plaintiff's claims for breach of warranty are time barred under New York law.  Importantly, it is undisputed that Ms. Haimowitz last received Aredia in New York in 2002.  Novartis is therefore correct that Haimowitz's breach of warranty claims in this case are untimely because she failed to file suit until December 2009—more than seven years after the applicable four-year statute of limitations began to run under New York law.

### III. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is granted in full.  The Court therefore directs the Clerk to enter judgment in Defendant's favor in accordance with this order.

**SO ORDERED.**

Dated:    New York, New York
          December 11, 2015

　　　　　　　　　　　　　　　　　　　John F. Keenan
　　　　　　　　　　　　　　　　　　　John F. Keenan
　　　　　　　　　　　　　　　　　United States District Judge